IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| CRYSTAL PAP, | |
|       Plaintiff, | CIVIL ACTION NO.: 5:17-cv-139 |
|     v. | |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security, | |
|       Defendant. | |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge John H. Maclean ("the ALJ" or "ALJ Maclean") denying her claim for Supplemental Security Income. Plaintiff urges the Court to reverse and remand the ALJ's decision for proper consideration of the evidence in this case. Doc. 14 at 21. Defendant asserts the Commissioner's decision should be affirmed. Doc. 15 at 11. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**BACKGROUND**

Plaintiff filed an application for Supplemental Security Income on July 29, 2014, alleging that she became disabled on March 4, 2014, due to bipolar disorder, obesity, post-traumatic stress disorder, high blood pressure and cholesterol, sleep apnea, chronic obstructive pulmonary disease, and swelling of her feet and legs. Doc. 10-3 at 5; Doc. 10-4 at 2. After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On September 13, 2016, ALJ Maclean conducted a video hearing at which Plaintiff, who was

represented by counsel, appeared and testified from Waycross, Georgia. Don K. Harrison, a vocational expert, also appeared at the hearing. Doc. 10-3 at 5. ALJ Maclean found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") since her application date of July 29, 2014. Id. at 6. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.[1] Id. at 2.

Plaintiff, born on June 7, 1977, was 37 years old on her alleged disability onset date and 39 years old when ALJ Maclean issued his final decision. Doc. 10-3 at 17, 18. She has at least a high school education and some college. Id. at 17, 40. Plaintiff's past relevant work experience includes work as a corrections officer.[2] Doc. 10-3 at 17.

## DISCUSSION

**I.      The ALJ's Findings**

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and

---

[1]     ALJ Maclean noted Plaintiff previously filed an application for disability benefits in November 2009. Plaintiff's claim was denied after a remand from the Appeals Council. Doc. 10-3 at 5; Doc. 10-2 at 20–28. While ALJ Maclean found there was no basis to reopen the previous application, he stated any reference to evidence prior to the last denial "is solely for viewing [Plaintiff's] medical condition from a longitudinal basis . . ." Id.

[2]     The ALJ stated Plaintiff's work as a corrections office is the only job which qualified as past relevant work based on the requirements of recency, duration, and substantial gainful activity. Doc. 10-3 at 17. Plaintiff also worked as an entry clerk, waitress, and jewelry salesperson. Id.

>work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines

whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since July 29, 2014, her application date.  Doc. 10-3 at 7.  At step two, ALJ Maclean determined Plaintiff had carpal tunnel syndrome, migraines, diabetes mellitus type 2, obesity, and bipolar disorder, conditions considered "severe" under the Regulations because her impairments caused "limitations or restriction having more than a minimal effect" on Plaintiff's ability to perform work-related activities.  Id. & at 8.  However, at the third step, the ALJ determined that Plaintiff's impairment did not meet or medically equal the severity of a listed impairment.  Id. at 9.  The ALJ found Plaintiff had the residual functional capacity to perform work at the sedentary exertional level, with the following exceptions: frequently climbing ramps and stairs; never climbing ropes, ladders, or scaffolds; frequently handling or fingering bilaterally but never performing rapid, repetitive movements; never crawling; occasionally stooping, crouching, or kneeling; occasionally working around hazardous machinery or heights; routine work with few changes; and occasionally interacting with supervisors, coworkers, and the public.  Id. at 12.  At the next step, the ALJ determined Plaintiff could not perform any of her past relevant work.  Id. at 16.  The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of an optical inspector and surveillance system operator, both of which are jobs at the unskilled, sedentary exertional level and which exist in significant numbers in the national economy.  Id. at 18.

**II.     Issues Presented**

Plaintiff avers the ALJ erred in failing to find she had severe impairments of a carotid artery aneurysm and residuals following surgery for that aneurysm, including continuing severe and frequent headaches, chronic obstructive pulmonary disease ("COPD"), sleep apnea, and hypertension, as her treating physician found.  Doc. 14 at 2.  Plaintiff also alleges the ALJ improperly discounted the medical source statements of Dr. Joshua McCarthy, her treating physician.  Id.

**III.    Standard of Review**

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

5

Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.   Whether the ALJ Properly Considered Plaintiff's Severe Impairments**

Plaintiff maintains the ALJ erred in finding she did not have severe impairments of carotid artery aneurysm and residuals following surgery for the aneurysm, including continuing severe and frequent headaches, COPD, sleep apnea, and hypertension.  Doc. 14 at 6.  Plaintiff asserts she still has headaches despite having surgery.  Her COPD required oxygen and a CPAP machine, and her hypertension was uncontrolled.  Id. at 16.  According to Plaintiff, these are all severe impairments which "clearly impacted" her ability to work and interfered with basic work activities.  Id.

In response, Defendant states ALJ Maclean did, in fact, find that Plaintiff's migraines were a severe impairment.  Doc. 15 at 5.  Defendant also states the ALJ considered Plaintiff's COPD, sleep apnea, and hypertension, and he found these conditions did not significantly limit Plaintiff's ability to perform basic work activities.  Id.  Specifically, Defendant asserts the ALJ

noted Plaintiff's COPD and sleep apnea improved with treatment, there was evidence Plaintiff continued smoking despite her contention she quit and recommendations from her pulmonologist that she quit, and she was noncompliant with her respiratory medications. Id. In addition, Defendant states the ALJ noted Plaintiff's hypertension was "benign" and "well-controlled with medication . . ." Id. Defendant further contends the ALJ did find that Plaintiff has some severe physical impairments, which is all that is required under step two, and the relevant question is the extent to which her impairments limited her ability to work. Id. at 5–6. Defendant maintains the ALJ considered the effect of Plaintiff's combined impairments, including her COPD, sleep apnea, and hypertension, and determined she could perform a reduced range of sedentary work. Id. at 6.

At step two, the ALJ must make a "threshold inquiry" as to the medical severity of the claimant's impairments. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1520a(a), 404.1523, 416.920(a)(4)(ii), (c), 416.920a(a), & 416.923. "[T]he finding of any severe impairment, whether . . . it qualifies as a disability and whether . . . it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, such as the abilities and aptitudes necessary to do most jobs. 20 C.F.R. §§ 404.1521(a)–(b) & 416.921(a)–(b). In other words, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." McDaniel, 800 F.2d at 1031; see Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)

(noting the mere existence of impairments does not reveal the extent to which they limit the claimant's ability to work). Pertinent examples of "basic work activities" include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); Sanchez v. Comm'r of Soc. Sec., 507 F. App'x 855, 857 (11th Cir. 2013).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). "For instance, when discounting a medical opinion, he should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." Id. (citing 20 C.F.R. §§ 404.1527(c) & 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted).

A residual functioning capacity assessment must always consider and address medical source opinions. If the residual functioning capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. Social Security

8

Ruling 96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). The final determination of a plaintiff's residual functioning capacity is reserved to the Commissioner. 20 C.F.R. § 404.1527(d), (e)(2).

In determining Plaintiff had the residual functional capacity to perform work at the sedentary exertional level with limitations, ALJ Maclean remarked Plaintiff's COPD, sleep apnea, history of carotid artery aneurysm, and hypertension had minimal or no effect on Plaintiff's ability to perform basic work activities, either alone or in combination with other impairments, and were non-severe. Doc. 10-3 at 8. In reaching this determination, ALJ Maclean noted Plaintiff's allegations regarding shortness of breath. Id. The ALJ noted that, although a pulmonary function test supported the presence of COPD, other evidence reflected Plaintiff's COPD was controlled with an inhaler and her sleep apnea was controlled by a continuous positive airway pressure ("CPAP") machine. Id. For example, ALJ Maclean observed Plaintiff told her pulmonologist the CPAP improved her fatigue. Id. In addition, ALJ Maclean noted chest x-rays "repeatedly reveal[ed]" no cardiopulmonary disease. Id. The ALJ discounted Plaintiff's subjective report of having quit smoking in July 2016 because there was no new medical evidence to corroborate that report. Id. Moreover, Plaintiff's physical examinations "consistently reveal[ed] an unremarkable respiratory system with lungs clear to auscultation, unlabored breathing, and no rales, rhonchi, or wheezing." Id. The ALJ noted evidence of Plaintiff being non-compliant with her COPD medications. Id. Therefore, substantial evidence supports ALJ Maclean's finding that Plaintiff's respiratory issues were not severe impairments within the meaning of the Act.

As for her aneurysm history, ALJ Maclean noted Plaintiff began complaining about headaches in 2004 but was not diagnosed with aneurysms until years later after a CT scan showed she had two. Id. at 9. However, the ALJ noted evidence of Plaintiff working as a corrections officer for years before her aneurysms were detected strongly suggested the carotid artery aneurysm did not have any more than a minimal limitation on Plaintiff's ability to perform basic work activities. Id. ALJ Maclean noted Plaintiff testified she uses Plavix, and medical records revealed she had a coil and stenting surgery to treat the aneurysm in November 2015, and Plaintiff's carotid artery aneurysm resolved after that procedure. Id. In addition, the ALJ observed Plaintiff's physical examinations revealed an unremarkable cardiovascular system with a regular heartbeat and rhythm, normal S1 and S2 sounds, and no gallops, murmurs, or rubs. Id. Therefore, substantial evidence supports ALJ Maclean's finding that Plaintiff's history of aneurysms was not a severe impairment within the meaning of the Act.

The ALJ noted Plaintiff had benign essential hypertension, and her blood pressure was controlled by medication. Id. In addition, the ALJ noted Plaintiff's blood pressure readings after her application date consistently reflected below hypertensive level blood pressure. Id. Therefore, substantial evidence supports ALJ Maclean's finding that Plaintiff's hypertension was not a severe impairment within the meaning of the Act.

In sum, substantial evidence supports ALJ Maclean's finding that Plaintiff's aneurysms, hypertension, and respiratory issues were not severe impairments within the meaning of the Act. The ALJ found the medical and other objective evidence of record revealed these conditions responded well to medications and treatment, were resolved through surgery, or did not meet the definition of that impairment. This enumeration of error is without merit.

**V.     Whether the ALJ's Improperly Discounted Dr. McCarthy's Opinion**

Plaintiff asserts ALJ Maclean did not address Dr. McCarthy's opinion about Plaintiff missing days from work, her need to lie down throughout the workday, or her need to elevate her legs.  Doc. 14 at 17.  Plaintiff maintains the ALJ should have followed Social Security Ruling 96-2p, which concerns the deference afforded a treating source's medical opinion.  Id.  Further, Plaintiff states the ALJ should have recontacted Dr. McCarthy if he had questions about Dr. McCarthy's opinion.  Id. at 18.

Defendant emphasizes that the ALJ gave moderate weight to Dr. McCarthy's September 2016 opinion that Plaintiff could perform work at the sedentary level with some limitations but notes ALJ Maclean did not fully credit Dr. McCarthy's opinions because his explanations conflicted with the record as a whole.  Doc. 15 at 7.  As an example, Defendant points to Dr. McCarthy citing Plaintiff's COPD as the primary basis for his limitations for Plaintiff, yet the record reflected her respiratory conditions were controllable when she complied with treatment. Id.  Defendant argues the ALJ was not required to recontact Dr. McCarthy if he did not find that to be necessary.  Id. at 9.  In sum, Defendant states the record contains sufficient evidence for the ALJ to make an informed decision.  Id. at 10.

As Defendant noted, ALJ Maclean gave moderate weight to Dr. McCarthy's opinion that Plaintiff could perform sedentary-level walking or standing with the limitations of lifting up to 20 pounds occasionally; limited pushing or pulling in her upper and lower extremities; never performing most postural activities, such as kneeling; performing unlimited manipulative activities, such as reaching; and avoiding all exposure to significant environmental conditions, such as extreme temperatures, wetness, pulmonary irritants, and hazards.  Doc. 10-3 at 14.  The ALJ remarked Dr. McCarthy was Plaintiff's primary treating physician and had seen Plaintiff for

11

several years. While Dr. McCarthy supplemented his opinion with explanations, ALJ Maclean found the record as a whole contradicted these explanations. Id. at 15. ALJ Maclean remarked specifically that Dr. McCarthy cited COPD as the primary basis for all Plaintiff's limitations, but the record reflected Plaintiff's respiratory conditions were controlled, as opposed to significant problems Plaintiff experienced with diabetes and carpal tunnel syndrome, which Dr. McCarthy did not emphasize. Additionally, the ALJ observed that, although Dr. McCarthy found Plaintiff to have significant restrictions in upper extremity pushing and pulling, he failed to assign any manipulative limitations, resulting in a "slight internal inconsistency in the opinion[.]" Id.

ALJ Maclean assigned less than great weight to Dr. McCarthy's opinion, and he explained the reasons for so doing. There is nothing before the Court indicating ALJ Maclean was unclear as to Dr. McCarthy's opinion or was otherwise confused by this opinion, and thus, he was under no obligation to recontact Dr. McCarthy or contact counsel. Plaintiff relies on optional, not mandatory, actions the ALJ may take in evaluating a claim. The law is clear that ALJs are not required to take any of these steps where the medical source evidence is clear. Wright v. Colvin, No. CV 115-024, 2016 WL 4500521, at *1 (S.D. Ga. Aug. 26, 2016) ("Conclusively, 20 CFR §§ 416.920b(b) and 404.1520b(b) state, 'if any of the evidence in your case record, including any medical opinions [are] inconsistent, we will weigh the relevant evidence and see whether you are disabled based on the evidence we have.' Thus, the mere determination a medical opinion is inconsistent does not require an ALJ recontact the source before discounting that evidence.") (quoting Hale v. Colvin, No. CIV.A. 14-00222-CG-N, 2015 WL 3397939, at *10 (S.D. Ala. Apr. 24, 2015), *report and recommendation adopted*, 2015 WL 3397628 (S.D. Ala. May 26, 2015); Parker v. Colvin, No. 2:11-CV-02682-RDP, 2013 WL 5411710, at *7 (N.D. Ala. Sept. 26, 2013) ("[ALJ] was not required to recontact [physician]

merely because he found her medical source statement was contradicted by her treatment notes.")).  In the event a medical opinion is insufficient to determine if a claimant is disabled, the ALJ has discretion and "*may* recontact [the source]."  Wright, 2016 WL 4500521, at *1 (quoting Hale, 2015 WL 3397939 at *10 (emphasis in original)); Alvarado v. Colvin, No. 15-62283-CIV, 2016 WL 3551482, at *13 (S.D. Fla. June 30, 2016) ("Because the totality of the medical evidence was sufficient for the ALJ to make her conclusion, the ALJ was not required to recontact [the medical source].")); see also Johnson on behalf of KJJ v. Berryhill, No. 5:16-CV-107, 2018 WL 1157554, at *6 (S.D. Ga. Mar. 5, 2018) (noting the ALJ was under no obligation to recontact treating physician where determination to discount opinion supported by substantial evidence).

What is more, ALJ Maclean explained why he gave less than great weight to Dr. McCarthy's opinion.  "[T]he law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Carter v. Berryhill, No. 5:17-CV-60, 2018 WL 4186412, at *6 (S.D. Ga. Aug. 30, 2018), *report and recommendation adopted*, 2018 WL 4659443 (S.D. Ga. Sept. 28, 2018) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241).

The ALJ's determination to only give moderate weight to Plaintiff's treating physician is supported by substantial evidence and clearly articulated, and he had good cause to discount this

opinion. Additionally, ALJ Maclean was under no obligation to recontact Plaintiff's medical sources. Accordingly, Plaintiff's assertions to the contrary are without merit.[3]

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

---

[3] Plaintiff's medical records are voluminous. While the Court focused only on the portions of the record that are relevant to Plaintiff's enumerations of error, it is evident ALJ Maclean reviewed and considered Plaintiff's medical conditions as a whole. Doc. 10-3.

judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 11th day of March, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA